UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

STEVEN HYPPOLITE,

    Plaintiff,

        vs.                        No. 3:11cv588(WIG)

DANIEL COLLINS and
JOEL GRISPINO,

    Defendants.
_____X

## RULING ON PLAINTIFF'S MOTION FOR A NEW TRIAL

Plaintiff Steven Hyppolite brought this action pursuant to 42 U.S.C. § 1983 against two police officers from the City of Norwich, Officer Daniel Collins and Officer Joel Grispino. Plaintiff alleged that the officers violated his constitutional rights during an interaction he had with them on November 9, 2010. After a three-day trial, a jury determined that the officers had violated Plaintiff's right to be free from the use of excessive force and awarded him no compensatory damages, $10.00 in nominal damages, and $1450.00 in punitive damages. Now, Plaintiff moves for a new trial on the issue of damages pursuant to Rule 59 of the Federal Rules of Civil Procedure; he argues that the award of only nominal damages is inconsistent with the jury's finding that his constitutional rights were violated. For the reasons that follow, the Court denies Plaintiff's motion.

**Background**

On the evening of November 9, 2010, Plaintiff was sitting in a parked car with a female friend, Laurie Gardiner, when he was approached by the defendant police officers. The officers were dispatched to the area to respond to a telephone report of a white female screaming at a

male to get out of her vehicle.  The officers observed Plaintiff sitting with a white female in a car parked on the wrong side of the street.  They approached the vehicle, and the interaction that followed was the impetus for the present action.  Plaintiff claimed that the officers used excessive force against him, unlawfully detained him, and unlawfully searched him in violation of the Fourth Amendment.  In response, the officers claimed their actions were reasonable under the circumstances.

### Evidence at Trial

Four witnesses testified at trial: Laurie Gardiner, Plaintiff, and both officers.

With respect to the excessive force claim, the only claim for which the jury found for Plaintiff, Ms. Gardiner testified that she observed both officers trying to pull Plaintiff out of the vehicle by grabbing him by the shirt and his arms. (Doc. # 112, Transcript from February 11, 2015, at 61).  She stated that Plaintiff's hands were held behind his back and the officers slammed him against the car door.  (*Id.* at 63).  She testified that she saw one officer holding Plaintiff's hands while the other officer appeared to be striking Plaintiff, and that she saw Plaintiff's body moving back and forth but that she did not see actual contact.  (*Id.* at 63-64, 78).  She added that it was "very clear that he was being hit." (*Id.* at 64).  In terms of resulting injury, Ms. Gardiner stated that during the interaction Plaintiff asked the officers to "let up" because the way in which they were holding his arms behind his back was painful.  (*Id.* at 65).  Finally, Ms. Gardiner testified that Plaintiff's shoulder was sore "for quite a while" after the incident, but she did not know for how long.  (*Id.* at 82-83).

Plaintiff also testified as to the events of the evening.  He stated that Officer Collins grabbed him by his neck and arm, dragged him out of the car, and slammed his head against the car roof. (Doc. # 113, Transcript from February 12, 2015, at 133-134, 165-166).  He testified

that he felt pain and dizziness when his head was slammed against the vehicle, and he was afraid and emotional at that point.  (*Id.* at 138).  He added that he was hit with a sharp object on his back.  (*Id.* at 140-141).  Plaintiff further testified that he felt pain in his shoulders and back when his arms were pulled behind him while he was detained.  (*Id.* at 136-137).  While he could not recall for how long he had physical pain following the incident, he stated that his shoulder and neck hurt on that evening, and he was still dizzy after the interaction.  (*Id.* at 149, 228-229).  Plaintiff also testified that he felt shocked, outraged, and hurt the evening of the incident, and that his hands were shaking and he was anxious.  (*Id.* at 149-150).  Plaintiff denied any ongoing emotional distress stemming from the incident.  (*Id.* at 228).  Finally, Plaintiff testified that he did not seek medical treatment as a result of the interaction.  (*Id.* at 229).

Officer Collins testified that Plaintiff was visibly and audibly upset, was "out of control," and was yelling profanities at the officers when they approached him.  (Doc. # 112 at 192, 201, 240).  Both officers testified that Plaintiff exited the vehicle with his hand in his pocket, and Officer Collins added that Plaintiff refused to remove his hand from the pocket after being told to do so.  (Doc. # 112 at 193, 195-196; Doc. # 113 at 39).  Officer Collins and Officer Grispino further testified that Plaintiff exited the vehicle on his own, and was not dragged out by them.  (Doc. # 112 at 197-199; Doc. # 113 at 38).  In addition, Officer Collins testified that once Plaintiff was outside of the vehicle, he approached him, turned him around and pushed him against the car.  (Doc. # 112 at 208).

Other than the testimony outlined above, Plaintiff presented no additional evidence, either in the form of testimony or through exhibits, of any injury he sustained or any other damages resulting from the incident.

### The Jury's Verdict

The Court held a charge conference before the jury was provided with the final jury instructions.[1]  Plaintiff made no objections to the nominal damages portions of the charge or the verdict form at that conference.  After the jury was charged, counsel was again given the opportunity to make any objection to the instructions before the jury began its deliberations.  Again, Plaintiff made no objections.

The jury completed a special verdict form with interrogatories.  It found for both officers on the unlawful detention and unlawful search claims.  With respect to the excessive force claim, the jury found that both officers had violated Plaintiff's constitutional rights by unlawfully using unreasonable force against him or by failing to intervene to prevent the use of excessive force.  The jury answered "no" in response to the interrogatories of whether the unlawful conduct of either officer was the proximate cause of injury to the Plaintiff.  Regarding damages, the jury awarded $0 in compensatory damages, $10.00 in nominal damages, and $725.00 in punitive damages against each officer.

## Discussion

"A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice."  *Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 314 (2d Cir.

---

[1] Well ahead of trial, both sides submitted proposed jury instructions and verdict forms to the Court.  In his proposed instructions, Plaintiff requested the following be given with respect to nominal damages: "If you find that Mr. Hyppolite has proven a claim against the defendants, but you find that Mr. Hyppolite suffered or proved no injury, you must award Mr. Hypploite what are called 'nominal damages.'"  *See* Doc. # 73-3 at ¶ 79; "You would award nominal damages if you conclude that Mr. Hyppolite's rights were violated, without any resulting compensatory damages.  You should also award nominal damages if, upon finding that some injury resulted from a given unlawful act, you find you are unable to compute monetary damages except by engaging in speculation or guesswork."  *See id.* at ¶ 80.  The charge the Court ended up submitting to the jury did not differ from Plaintiff's proposed instructions relating to nominal damages in any material way.

1999) (citing *Atkins v. New York City,* 143 F.3d 100, 102 (2d Cir. 1998)).  When a Rule 59 motion challenges a damages award, the court may "order a new trial, a new trial limited to damages, or, under the practice of remittitur, may condition a denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount." *Crawford v. City of New London*, No. 3:11CV1371 JBA, 2014 WL 3895909, at *1 (D. Conn. Aug. 8, 2014) (citing *Tingley Sys., Inc. v. Norse Sys., Inc.,* 49 F.3d 93, 96 (2d Cir. 1995)).  The Court is mindful that "[i]t is well-settled that the calculation of damages is the province of the jury." *Id.* (citing *Trademark Research Corp. v. Maxwell Online, Inc.,* 995 F.2d 326, 337 (2d Cir. 1993)).

In support of his motion, Plaintiff argues the testimony at trial establishes two possible bases for a finding of excessive force: that Plaintiff was forcibly removed from the vehicle, and/or that Plaintiff was struck and/or pushed while he was restrained by the officers in connection with the search.  The officers denied unlawfully removing Plaintiff from the car, and denied striking Plaintiff during the search, but Officer Collins did admit to pushing Plaintiff against the vehicle.  Plaintiff contends that whatever version of evidence the jury credited in its finding of excessive force, there was a least some compensable injury which flowed from the constitutional violation requiring the jury to award compensatory damages.

Plaintiff appears to argue that he is entitled to compensatory damages as a matter of law because he has proven that excessive force was used against him.  In fact, though, an excessive force finding does not necessarily entitle a plaintiff to compensatory damages.  *See Atkins*,143 F.3d at 103 ("A finding of excessive force does not, however, entitle the victim to compensatory damages as a matter of law."); *Haywood v. Koehler*, 78 F.3d 101, 104 (2d Cir. 1996) ("…a finding of excessive force does not, as a matter of law, entitle the victim to an award of compensatory damages.").  In order to recover compensatory damages in an excessive force

5

case, "a plaintiff must prove that his injuries were proximately caused by the constitutional violation." *Gibeau v. Nellis*, 18 F. 3d 107, 110 (2d Cir. 1994). Accordingly, when a jury makes a finding of excessive force, it is permissible for it to also find that "only nominal damages are appropriate where, for example, a plaintiff's testimony as to his injuries lacks objective support or credibility, or where both justified force and unjustified force were used, either of which could have caused his injuries, or where some of the plaintiff's injuries could have been caused by a codefendant who was not found to have used excessive force." *Kerman v. City of New York*, 374 F.3d 93, 123 (2d Cir. 2004). This case fits squarely within the first prong of the *Kerman* rule.

      To begin, the jury could have readily found Plaintiff's testimony as to his alleged injuries, or the extent of any injuries, not to be credible. Indeed, in the Court's view, this would have been the most reasonable interpretation of the evidence. The evidence Plaintiff offered supporting his claim of a compensable injury was far from voluminous or persuasive. Plaintiff testified that he felt pain in his back and shoulder during the incident and immediately after, and that he was shaken up after the interaction. Ms. Gardiner also testified that Plaintiff's shoulder was sore following the incident, but she did not know for how long. Other than this, Plaintiff offered no support for his claim of injury. For example, he did not testify that he sought medical treatment or submit any medical opinion as to the extent of his damages. Neither did he present evidence of any injury that was ongoing which resulted from the use of force on the evening of November 9, 2010. In fact, Plaintiff expressly disclaimed any ongoing emotional distress, and could not recall whether any physical problems lasted beyond the evening of November 9, 2010. (*See* Doc. # 113 at 228). Further, counsel for Plaintiff, when questioning him about his injuries, specifically focused on only the date of the incident: for example, counsel asked how Plaintiff felt physically "just that night," and how he felt emotionally "just focusing on the day of the

incident." (*See id.* at 149). It is possible, and reasonable, that the jurors simply did not believe Plaintiff and Ms. Gardiner as to the severity of, or even *presence of*, any injury or that the force used, though excessive, caused any physical or emotional harm.

It was in the province of the jury to make a credibility determination. In so doing, the jurors were "not required to accept the entirety of either side's account, but were free to accept bits of testimony from several witnesses and to make reasonable inferences from whatever testimony they credited." *Haywood* at 105. Here, the jury could have found that pushing Plaintiff against the car was excessive force, or it could have credited Plaintiff's testimony that the officers struck him while he was detained, but discredited his and Ms. Gardiner's testimony as to the presence of, or extent of, any resulting injuries.[2] Based on the evidence presented, the jurors could have found "that excessive force, though used, did not result in compensable injuries." *Id.* When this is the case, "the award of only nominal damages will not be disturbed." *See id.*; *see also Adedeji v. Hoder*, 935 F. Supp. 2d 557, 575 (E.D.N.Y. 2013) (finding that when the jury could have concluded that plaintiff was not credible with respect to discussing his injuries, and that he exaggerated their both degree and cause, a new trial was not warranted).

The jury also could have reasonably concluded that Plaintiff had not adequately proven actual injury. Compensatory damages can be awarded only when a plaintiff proves the violation

---

[2] Plaintiff maintains that if he was struck by the officers while already restrained, he is entitled to compensatory damages regardless of whether any identifiable physical injury resulted. The Court rejects this argument. In the first place, as the Court has already explained, the jury could have found Plaintiff being pushed against the vehicle was excessive and completely rejected the testimony about Plaintiff being struck from behind. In addition, the case upon which Plaintiff relies in support of his position that being struck while restrained entitles him to compensatory damages as a matter of law is inapposite. In *Haywood*, a *handcuffed prisoner* was assaulted in his cell. In a footnote, the Second Circuit explained that such an assault "would necessarily warrant some compensatory damages, at least for pain and suffering, even if no lacerations or other observable injuries resulted." *Haywood*, 78 F.3d at 105, n.2. The instant case is, of course, readily distinguishable as Mr. Hyppolite was neither handcuffed nor imprisoned in a cell during the incident.

of his rights proximately caused actual, compensable injury.  *See Brown v. Dillion*, 28 F. App'x 77, 78 (2d Cir. 2002); *Gibeau*, 18 F.3d at 110.  When a jury "is unable to compute the monetary damages except by engaging in pure speculation and guessing," an award of nominal damages is appropriate.  *See Adedji*, 935 F.Supp.2d at 574.

Here, the jury could have reasonable concluded, based on the dearth of evidence presented as to Plaintiff's alleged injuries, that it had no basis upon which to determine an amount of compensatory damages without resulting in guesswork.  Plaintiff presented no expert medical testimony, no medical records, or any other documentation which would allow a jury to place a monetary value on – or even to substantiate – any injury Plaintiff claimed.  When a plaintiff does not prove actual, compensable injury, an award of nominal damages is appropriate.  Here, because the jury could have reasonably found that Plaintiff did not objectively support his claim of injury, the award of only nominal damages was not in error.[3]

In sum, it was reasonable for the jury to have found that Plaintiff's "testimony as to his injuries lack[ed] objective support or credibility."  *Kerman*, 374 F.3d at 123.  An award of nominal damages was thus proper.  *See Amato*, 170 F.3d at 314 (finding that when a plaintiff's "claims of injury lack credibility, or where the injuries lack monetary value," an award of nominal damages is reasonable.).  A new trial is not warranted.

## Conclusion

For the reasons discussed above, the record does not show that the jury's verdict on compensatory damages was either seriously erroneous or a miscarriage of justice.  As such, the

---

[3] In a final attempt to support his motion, Plaintiff claims that because the jury heard evidence of Plaintiff's prior interactions with police, the verdict necessarily leads to the inference that the jury acted on the basis of improper considerations: that the jury did not award compensatory damages because it was unwilling to give money to a person who had a history of interactions with police officers.  The Court rejects this argument in full, as there is absolutely no evidence in the record to support such a contention.

Court will not set aside the verdict and order a new trial.  Plaintiff's motion for a new trial [Doc. # 105] is DENIED.

  SO ORDERED, this  _7th_  day of May, 2015, at Bridgeport, Connecticut.

             _/s/ William I. Garfinkel_
            WILLIAM I. GARFINKEL
            United States Magistrate Judge